# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEREMY L. DALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-0140-SEB-MPB |
| | ) | |
| ANTHONY AGRESTA, | ) | |
| SHERIFF JOHN LAYTON, | ) | |
| MARION COUNTY SHERIFF DEPT., | ) | |
| | ) | |
| Defendants. | ) | |

## Entry on Cross-Motions for Summary Judgment and Directing Entry of Final Judgment

Plaintiff Jeremy Dale ("Mr. Dale"), an Indiana prisoner incarcerated at the Indiana State Prison ("ISP"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendant Anthony Agresta was deliberately indifferent to his safety in violation of the Eighth Amendment by failing to restrain him while being transported in a police vehicle. He also alleges that Sheriff John Layton and the Marion County Sheriff's Department have a policy or practice of not restraining inmates while they are being transported and that this policy places inmates in danger in violation of the Eighth Amendment. Mr. Dale also alleges that Anthony Agresta was deliberately indifferent to the injuries he sustained in a car accident by failing to provide him with medical attention in violation

of the Eighth Amendment.[1] The parties have all moved for summary judgment.[2] For the following reasons, Mr. Dale's motions for summary judgment, dkt. [136, 142], are **denied** and the defendants' motion for summary judgment, dkt. [162], is **granted**.

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

---

[1] For the first time in his summary judgment motion, Mr. Dale argues that the Marion County Sheriff's Department failed to properly train its employees to insure the safety of inmates being transported to and from the Marion County Jail. The Court did not permit a failure to train claim to proceed (because Mr. Dale did not raise such a claim) in this action when it screened the third amended complaint. *See* dkt. 69. Therefore, the Court will not entertain this argument.

[2] Mr. Dale filed two motions for summary judgment. Dkts. 136, 142. The motions are substantially identical and the exhibits are identical. The Court will not separately consider or address each motion.

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC* v. *Int'l Union of Operating Engineers,* 335 F.3d 643, 647 (7th Cir. 2003). Cross-motions for summary judgment are treated separately. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008). When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## II. Undisputed Facts

The following facts are undisputed for purposes of summary judgment:[3]

Mr. Dale has been incarcerated since 2003. He is currently incarcerated at the ISP in Michigan City, Indiana. On April 30, 2013, he was in Indianapolis seeking post-conviction relief. Dkt. [163]-1, p. 4. That day, Mr. Dale was to be transported back to the ISP He was in ankle restraints and handcuffs. He had a shackle chain and black box around his waist. The handcuffs and ankle restraints were connected to the black box at his waist. He was loaded into a Marion County Sheriff Office ("MCSO") transport vehicle but was not placed in seatbelts or otherwise restrained. A female inmate was also being transported in the same van with Mr. Dale. Dkt. [163]-

---

[3] In his response to the defendants' motion for summary judgment, Mr. Dale states that he disputes each fact in the Statement of Material Facts Not in Dispute. Dkt. 168. One of the facts in the defendants' statement is that Mr. Dale was an unrestrained passenger in a Jail transport vehicle on April 30, 2015. Mr. Dale's response contesting this statement is troubling because if this is not true, then Mr. Dale does not have a claim at all. Similarly, some of the facts in the defendants' statement of facts come directly from Mr. Dale's third amended complaint. Dkt. 164, at p. 2. For example, the defendants state that Mr. Dale alleges he sustained damages as a result of the car accident.

1, p. 5. The transport vehicle was a Ford E-350 passenger van. Dkt. [163]-2, p. 17. Deputy Anthony Agresta was driving the transport van. Deputy William Ellis was riding in the passenger seat.

At approximately 8:45 a.m., the transport van was stopped at a red light at the intersection of New York Street and Pine Street in Indianapolis. The transport van was struck from behind by a second vehicle. Mr. Dale states that immediately following the collision, he was tossed around and saw stars. He was thrown into a cage that separated him from the door, and ended up crunched up on the floor. He hit a portion of the cage separating him from the other passenger. He then felt pain shoot down his back, leg, and groin area. Because of the hand cuffs and waist chain, Mr. Dale was not able to use his arms to protect himself. Dkt. 163-1, pp. 7-9. After the van was struck, Deputy Agresta immediately placed the van in park and activated his emergency lights. Dkt. 163-2. He exited the van and checked on the passengers. Deputy Agresta asked Mr. Dale if he was injured. Dkt. 163-1, p. 13. Mr. Dale complained that his neck, back, leg and groin hurt because he hit the metal cage. Dkt. 163-1, p. 14.

Deputy Agresta radioed dispatch to inform them that he had been involved in an accident and requested an accident report. Deputy Ellis radioed Lieutenant Steve Keithley, who arrived on the scene with Deputy Steve Crawley. Dkt. 163-2, p. 5.

After the collision, Deputy Agresta's supervisor, Sgt. Schuyler Atkins, arrived on the scene and completed a Supervisor's Vehicle Crash and Damage Report. When preparing this report, Sgt. Atkins spoke with the driver of the vehicle that struck the van, Amanda Wuestefeld. Wuestefeld claimed that she was traveling at the estimated speed of 2 mph when her vehicle struck the van. She stated that she accelerated when she saw traffic in the next lane move forward before she realized the transport van had not yet accelerated. Dkt. 163-2, p. 5.

Sgt. Atkins also spoke to Mr. Dale and noted he complained of pain in his upper torso. Dkt. 163-2. An Indianapolis Fire Department medic was dispatched to the scene, but Lt. Keithley disregarded the medic and instructed Deputy Crawley to transport Mr. Dale to the Jail to be evaluated by medical personnel. Dkt. 163-2, p. 5.

Deputy Agresta and another officer removed Mr. Dale from the transport van and carried him to a patrol car. Dkt. 163-1, pp. 10, 13, 16. Mr. Dale was transported back to the Jail. Dkt. 163-1, p. 16.

Mr. Dale was taken directly to be seen by medical personnel when he arrived at the Jail. After being examined by medical personnel at the Jail, Mr. Dale was transported to Wishard Hospital by a transport vehicle. Dkt. 163-1, p. 16. This transport vehicle had safety belts. Mr. Dale estimates that he was transported to the hospital about an hour after the accident occurred. Dkt. 163-1, p. 17.

Medical personnel at the hospital took x-rays, gave him Ibuprofen, and discharged him. He did not sustain any broken bones in the accident. Dkt. 54-3, p. 23, 30. Mr. Dale was then transported back to the Jail in a transport vehicle that had seatbelts. At the Jail, Mr. Dale was placed in a holding cell and had to sit on the floor. He was eventually moved to a single cell after he complained about being in pain. Dkt. 163-1, p. 17. Mr. Dale was transported to the ISP the next morning in a transport vehicle with seatbelts. Dkt. 163-1, p. 18. Mr. Dale continues to suffer from back pain that he attributes to this accident. Dkt. 163-1, pp. 22-23.

It is undisputed that the MCSO Jail Division Policies and Procedures does not address the restraining of inmates during transport to and from the Jail in MSCO transport vehicles. Dkt. 136-1.[4]

### III. Analysis

**A. Eighth Amendment Seat Belt Claim**.

Mr. Dale alleges that Deputy Agresta was deliberately indifferent to his safety in violation of the Eighth Amendment by failing to restrain him while being transported in a police vehicle. He also alleges that Sheriff John Layton and the Marion County Sheriff's Department have a policy or practice of not restraining inmates while they are being transported and that this policy places inmates in danger in violation of the Eighth Amendment. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978)

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison conditions to be "humane," though not necessarily "comfortable." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see* U.S. Const. amend. VIII. To establish an Eighth Amendment violation, an inmate must show: "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind

---

[4] Mr. Dale's motions for summary judgment recite the polices set forth in the MCSO Jail Division Policies and Procedures Book. These policies are irrelevant to his claim that the defendants violated his rights under the Eighth Amendment when they failed to restrain him with seat belts while he was being transported to the ISP. Dkt. 136-1. Moreover, his motions also claim that Deputy Agresta violated the MCSO Policies and Procedures by failing to properly notify the communications department about the accident, request a medic, etc. While these statements are belied by the record, these summary judgment arguments are irrelevant to the claims he raised in the third amended complaint as set forth by the Court in the opening paragraph. Mr. Dale cannot maintain a claim under § 1983 based on the alleged violations of the MCSO Policies and Procedures. 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or departmental regulations. *Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006).

on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

There is no Seventh Circuit or Supreme Court precedent holding that the failure to provide restraints or seat belts in a police transport vehicle, without more, is a violation of the Eighth Amendment. Similarly, this Court has not yet addressed whether there is a violation of the Eighth Amendment when a jail official does not provide a seatbelt to an inmate in transport. In the absence of controlling precedent, the Court finds other district and circuit court precedent to be persuasive.

In *Fluker v. County of Kankakee*, 945 F. Supp. 2d 972, 990 (C.D. Ill.), *aff'd*, 741 F.3d 787 (7th Cir. 2013), prisoner Roy Fluker was injured when the police van he was a passenger in stopped short and he tumbled off his seat and crashed into the metal divider between the front seat and the rear of the van. Fluke was unstrained at the time. *Id*. at 976-77. Fluker filed an Eighth Amendment claim against officers based in part on their failure to restrain him while he was being transported in a police van. *Id*. The district court noted that "the failure to seatbelt an inmate while being transported in a prison vehicle in and of itself neither creates an 'excessive risk to inmate health or safety' nor demonstrates a 'deliberate indifference to serious medical needs.'" While Fluker did not appeal the dismissal of his claim on the merits to the Seventh Circuit, the Seventh Circuit affirmed the dismissal of the claim on other grounds. *Fluker v. County of Kankakee*, 741 F.3d 787, 794 (7th Cir. 2013). Similarly, the Court has found decisions from the Second, Eighth, and Eleventh Circuits that have held that the failure to provide an inmate with a seatbelt does not,

standing alone, give rise to a constitutional claim. *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) ("the failure to provide a seatbelt is not, in itself, 'sufficiently serious' to constitute an Eighth Amendment violation"); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999) ("[W]e do not think that the [municipality's] purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a 'substantial risk of serious harm.'"); *Smith v. Sec'y For Dep't of Corr.*, 252 Fed.Appx. 301, 304 (11th Cir. 2007) (unpublished) (refusing to hold that "riding in a van equipped with the manufacturer's car seats, seat belts, and windows is a necessity, such that riding in a van without these characteristics is a deprivation of the minimal measure of life's necessities or is something that modern society would find intolerable," and that doing so was not a "sufficiently risky condition" for an Eighth Amendment violation).

The Court concludes that transporting inmates in vans without seat belts does not meet the deliberate indifference standard. It does not represent a total lack of concern to the inmate passenger and is not the equivalent of wanting harm to come to the inmates that ride in their van. *Mojet v. Transport Driver*, 2006 WL 3392944 (N.D. Ind. 2006). For these reasons, the Court concludes the failure to provide a seatbelt is not, without more, 'sufficiently serious' to constitute an Eighth Amendment violation

Because the Court concludes that the failure to provide a seatbelt – without more – does not constitute an Eighth Amendment violation, Mr. Dale's claims that Deputy Agresta was deliberately indifferent for failing to restrain him and that the Sheriff's alleged policy of not restraining inmates prior to transport must fail. Without a constitutional deprivation, there can be

no *Monell* claim.[5] *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Deputy Agresta and Sheriff Layton and the Marion County Sheriff Department's motion for summary judgment on the Eighth Amendment claim, dkt. [162], is **granted**.

**B. Medical Claim**

Finally, Mr. Dale alleges he was denied medical treatment by Deputy Agresta immediately after the accident in violation of the Eighth Amendment. To prevail on an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

The Court reviews "the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Cavalieria v. Shephard*, 321 F.3d 616, 625-26 (7th Cir. 2003)).

Mr. Dale received medical treatment within one hour of the accident. Therefore, his claim must be analyzed as one alleging that Deputy Agresta unnecessarily delayed him from receiving treatment. A delay in treatment that causes unnecessary pain is actionable even if it did not exacerbate the injury or diminish the chances of a full recovery. *See Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012) (holding that the plaintiff stated an Eighth Amendment claim because "even though this [four-day] delay [in treatment] did not exacerbate [the plaintiff's] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition"); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful

---

[5] Because the Court concludes there is not an Eighth Amendment violation, it will not separately address Deputy Agresta's argument that he was entitled to qualified immunity.

conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

Here, after the accident when Mr. Dale complained that he had been injured, Deputy Agresta radioed dispatch to inform them that he had been involved in an accident and requested an accident report. Deputy Agresta's supervisor, Sgt. Schuyler Atkins, arrived on the scene and completed a Supervisor's Vehicle Crash and Damage Report. Sgt. Atkins spoke to Mr. Dale and noted he complained of pain in his upper torso. An Indianapolis Fire Department medic was dispatched to the scene, but Lt. Keithley disregarded the medic and instructed Deputy Crawley to transport Mr. Dale to the Jail to be evaluated by medical personnel.[6]

When Mr. Dale arrived at the Jail, he was taken directly to be seen by medical personnel. After being examined by medical personnel at the Jail, Mr. Dale was transported to Wishard Hospital.

Mr. Dale received medical treatment at Wishard Hospital within one hour of being involved in the accident. Medical personnel at the hospital took x-rays, gave him Ibuprofen, and discharged him. He did not sustain any broken bones in the accident. Moreover, Mr. Dale has presented no evidence that the hour delay in being seen by doctors at Wishard Hospital exacerbated his injury or unnecessarily prolonged his pain. Based on these facts, Mr. Dale's allegations that Deputy Agresta took action or failed to take action that constituted deliberate indifference must fail. A one hour delay in medical treatment for an injury that was ultimately treated with ibuprofen does not constitute an Eighth Amendment claim. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (stating that a two-hour delay is not an unreasonably long wait for an x-ray, an

---

[6] There is no evidence in the record put forth by Mr. Dale that the decision to turn away the medic was within Deputy Agresta's control.

examination, and possibly a set of a fracture). Deputy Agresta's motion for summary judgment on the medical care claim, dkt. [162], is **granted**.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [162] is **granted**. Mr. Dale's motions for summary judgment, dkt. [136, 142], are **denied**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 11/16/2017

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Counsel of record via CM/ECF

JEREMY L. DALE
978604
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360